UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KATHY ST.CLAIR-SEARS, *et al*, § <br> § <br> Plaintiffs, § <br> VS. § <br> § <br> LIFECHEK STAFF SERVICES, INC., § <br> § <br> Defendant. § | CIVIL ACTION NO. 4:12-CV-52 |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Pending before the Court are the defendant's, Lifechek Staff Services, Inc., ("Lifechek"), motion for summary judgment (Docket No. 30), the plaintiff's, Norma Todd (the "plaintiff"), response (Docket No. 48), and Lifechek's reply (Docket No. 61).  Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby GRANTS Lifechek's motion for summary judgment.[1]

### II.   FACTUAL BACKGROUND

The plaintiff has worked as a photo clerk/cashier for Lifechek from March 2007 to August 2008, and then from July 2009 to the present.  She claims that she was sexually harassed by her supervisor, store manager Bob Byrnes.

The plaintiff specifically alleges that, during her first period of employment, from March 2007 to August 2008, Byrnes took a picture of his penis, sent it to a co-worker, and instructed the co-worker to show the picture to her.  She claims that the co-worker showed her the photograph, and in response, she gagged and said that she did not want to see it again.

---

[1] Lifechek has filed separate motions with respect to each plaintiff and the plaintiffs have filed separate responses.  Therefore, the Court will issue separate decisions.

According to the plaintiff, Byrnes also "patted" her "butt" on two different occasions, and during one of those occasions, he remarked, "nice butt." She alleges that the first time Byrnes touched her, she told him not to do it again; the second time, Byrnes walked away before she could respond. The plaintiff claims that, every other day, Byrnes physically leaned on her so that their arms and shoulders touched. While leaning on her, the plaintiff asserts, Byrnes made comments such as, "how are you doing today beautiful?" She also contends that Byrnes massaged her shoulders on multiple occasions. According to the plaintiff, the first time Byrnes massaged her shoulders, she instructed him to stop and Byrnes became angry and left. She alleges that the second time Byrnes massaged her shoulders, she also told him to stop but Byrnes responded, "I know you like it." The plaintiff told Byrnes that she did not like him touching her and, in response, Byrnes developed an attitude towards her.

The plaintiff alleges that Byrnes told her co-workers, in her presence, that she had a "nice butt" and that he wanted to "do her." Byrnes also sent her two notes, stating that he was attracted to her and asking her out on dates. She states that she did not respond to the notes. The plaintiff also claims that Byrnes followed her to lunch at a nearby establishment, sat at her table uninvited, and touched her feet underneath the table. She claims that she told Byrnes she had not invited him and did not enjoy him touching her feet; Byrnes responded, "Sorry." The plaintiff alleges that in August of 2008, she resigned because of Byrnes' sexual harassment.

The plaintiff was rehired in July of 2009 and claims that Byrnes' harassment continued. She alleges that Byrnes gave her "a little pat" on the "butt" and said, "nice butt still." She claims that she told Byrnes he needed to stop touching her. The plaintiff asserts that Byrnes also gave her a note asking if she knew "where he could get a 'BJ' in Willis, Texas," which she understood

to be a request to her for oral sex. The plaintiff also alleges that Byrnes continued to follow her to lunch.

According to the plaintiff, she told Tina Walker, the head technician, about Byrnes' note and Walker told her to speak with the pharmacist. The plaintiff claims that she told the pharmacist about Byrnes' conduct and he said he would address the matter, but the pharmacist failed to take any action to address her complaints.[2]

On January 21, 2010, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. In February of 2010, Scott Younker, the director of operations, met with the plaintiff to discuss her complaint. On February 12, 2010, Byrnes was suspended and, on February 17, 2010, as a result of the investigation, Byrnes was terminated.

The plaintiff claims that after filing her charge of discrimination, Lifechek retaliated against her by giving her a write-up and reducing her weekly hours from 40 to 28.[3]

Subsequently the plaintiff filed the instant suit, claiming sexual harassment and retaliation in violation of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act.

### III.   CONTENTIONS OF THE PARTIES

#### A.   Lifechek's Contentions

Lifechek claims that most of the allegations that the plaintiff relies upon to support her sexual harassment claim fall outside of the 300-day statute of limitations. As to the remaining

---

[2]The plaintiff claims that the pharmacist never addressed her complaint. In her sworn deposition, however, she acknowledges that Byrnes' conduct stopped after she reported it to the pharmacist.

[3]The plaintiff's retaliation claims were made in an amended charge of discrimination from April 19, 2010. In a response to the charge, Lifechek denied any retaliation and noted that the plaintiff's "claim that her hours were cut from 40 to 28 hours was based on a misunderstanding" and that Lifechek met with the plaintiff to address the misunderstanding. The plaintiff has provided no documentary evidence to establish that her hours were cut or to refute Lifechek's position that her claim was based on a misunderstanding.

allegations that are timely, Lifechek claims that they are not sufficient to prove the fourth element of a hostile work environment, *i.e.*, that the alleged harassment affected a term, condition, or privilege of the plaintiff's employment. Lifechek specifically claims that the remaining allegations of harassment were not "severe or pervasive" as required by law.

Similarly, Lifechek argues that the retaliation claim should fail because the plaintiff, who remains employed by the company, has presented no evidence of adverse employment action. Lifechek also contends that there is no evidence of any causal nexus between any protected conduct and the purported adverse employment action.

### B. The Plaintiff's Contentions

The plaintiff does not dispute that the overwhelming majority of her allegations occurred outside the 300 day period, but she claims that her hostile work environment claim is a "continuing violation" and, as such, the Court can consider conduct that occurred outside the 300-day time period. The plaintiff also contends that, when considering the totality of the circumstances, it is "evident" that the events complained of created an intimidating, hostile, and offensive work environment.

The plaintiff further argues that her retaliation claim should proceed because the reduction in her weekly hours constitutes an adverse employment action. She also claims that the reduction in her hours one month after she filed her charge of discrimination establishes the necessary causal connection for her prima *facie case* of retaliation.

### IV. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.

R. CIV. P. 56 (c). "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322–25 (1986). Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251–52).

## V.   ANALYSIS AND DISCUSSION

Under the Civil Rights Act of 1964 ("Title VII"), it "shall be . . . unlawful . . . for an employer . . . to discharge any individual or otherwise to discriminate . . . with respect to [her]

compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Similarly, under the Texas Commission on Human Rights Act ("TCHRA"), it is unlawful for an employer to engage in sexual harassment and/or retaliate against an employee based on sex. *See* Tex. Lab. Code §§ 21.051; 21.055. The legal analysis for Title VII and TCHRA claims are identical and, therefore, courts apply the legal standards developed by the federal courts to resolve the claims. *See Reed v. Neopost USA, Inc*., 701 F.3d 434, 439 (5th Cir. 2012); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010).

**A.     Sexual Harassment.**

The Court is of the opinion that most of the alleged acts upon which the plaintiff relies to raise her sexual harassment claim are outside of the statute of limitations and the remaining acts did not affect a term, condition, or privilege of her employment.

Lifechek notes that, pursuant to 42 U.S.C. § 2000(e)-5(e), the statute of limitations for the plaintiff's Title VII claims is 300 days. The plaintiff filed her EEOC charge on January 4, 2010. Therefore, Lifechek argues that it cannot be held liable for any alleged acts of sexual harassment that occurred prior to March of 2009, namely: (1) store manager Bob Byrnes took a picture of his penis, sent it to a co-worker, and instructed the co-worker to show the picture to the plaintiff; (2) Byrnes "patted" the plaintiff's "butt" on two different occasions, during one of which he remarked, "nice butt;" (3) every other day, Byrnes leaned on the plaintiff so that their arms and shoulders touched and he stated, "how are you doing today beautiful"?; and he also massaged the plaintiff's shoulders; (4)  Byrnes asked the plaintiff out on dates and also sent her two notes asking her on dates; (5) Byrnes told the plaintiff's co-workers, in her presence, that she had a "nice butt" and that he wanted to "do her;" and (6) while the plaintiff was having lunch at a

nearby location, Byrnes showed up uninvited, sat at her table, and touched her feet underneath the table.

The plaintiff, who has acknowledged that the aforementioned acts occurred during her first period of employment, from March 2007 to August 2008, does not seem to dispute that they are outside of the 300-day limitations (prior to March of 2009). She argues, however, that since this is a hostile work environment claim, the "continuing violation" doctrine applies, and, as such, this Court may consider acts that are outside the 300-day period together with the acts that are within the limitations period. The Court finds the plaintiff's argument unpersuasive.

Under the "continuing violation" doctrine, a court may, but is not required to, consider "the entire scope of the hostile work environment claim," including "behavior alleged outside the" limitations window, "so long as any act contributing to that hostile environment takes place within the statutory time period." *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). However, there is no continuing violation if there is an "intervening" action or event between the acts that fall outside the limitations period and those that fall within it. *Stewart*, 586 F.3d at 328 (an intervening action or event "will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window") (citations omitted).

In this case, the Court is of the opinion that the plaintiff's resignation in 2008 was an intervening act that precludes application of the "continuing violation doctrine." Specifically, the plaintiff acknowledges that most of Byrnes' alleged acts towards her occurred during her first period of employment, from March 2007 to August 2008. The plaintiff, however, resigned from Lifechek in 2008. She was subsequently rehired and has worked at the company from July 2009 to the present. Therefore, the Court finds that the first period of alleged harassment (from March

2007 to August 2008) was severed by the plaintiff's resignation in 2008. Accordingly, there was no "continuing violation" and the Court will not consider the acts from the first period of employment (which are outside the limitations period) together with the acts from the later employment period (which are within the limitations period). *See Stewart*, 586 F.3d at 328 (an intervening action or event "will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window") (citations omitted).[4]

Moreover, under the facts of this case, allowing the plaintiff, who resigned from the company in 2008, to rely on the alleged acts during her first period of employment, would defeat the purpose of finality underlying the statute of limitations. In fact, the Fifth Circuit has instructed that the "theory of continuing violation has to be guardedly employed because within it are the seeds of the destruction of statutes of limitation in Title VII cases." *Merriman v. Potter*, 251 F. App'x 960, 965 (5th Cir. 2007) (citations omitted); *see also Morgan*, 536 U.S. at 113-114 (the Supreme Court noted that, "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of . . . sympathy for particular litigants") (citations omitted).

Having determined that the plaintiff cannot rely on the alleged acts by Byrnes that occurred prior to March of 2009, the Court must now determine whether the remaining acts that are within the limitations period amount to sexual harassment.

---

[4]In *Stewart*, the plaintiff complained that her supervisor was sexually harassing her. As a result, the company reassigned her to a new supervisor. Subsequently, however, the new supervisor retired and the plaintiff ended up being supervised by the same former supervisor she had accused of harassing her. The plaintiff argued that, under the "continuing violation" doctrine, the district court should have considered the acts that were outside the limitations period (prior to her reassignment) together with the acts that were within the period. The Fifth Circuit rejected the plaintiff's argument, finding that the plaintiff's reassignment to a new supervisor was an "intervening action" that "cut off the employer's liability for the earlier harassment." *Stewart*, 586 F.3d at 325, 329-330. Although *Stewart* involved the intervening action of an employer, the underlying legal principle is clear and broad, *i.e.*, an intervening action or event, such as the resignation and re-employment in this case, "will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window." *Stewart*, 586 F.3d at 325, 329-330.

To establish a hostile work environment under Title VII, the plaintiff must establish that: (1) she belongs to a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) the harassment affected a "term, condition, or privilege" of employment.  *Stewart*, 586 F.3d at 330.

In this case, Lifechek does not dispute that the plaintiff can satisfy the first three elements.  Lifechek argues, however, that the plaintiff cannot satisfy the fourth element, *i.e.*, that the alleged harassment affected a "term, condition, or privilege" of her employment.  The Court agrees that the plaintiff has failed to satisfy the fourth element because the alleged conduct at issue was not sufficiently severe or pervasive as required by law.

To affect a term, condition, or privilege of employment, "sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment."  *Stewart*, 586 F.3d at 330 (citations omitted).  "A recurring point in [Supreme Court] opinions is that . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  *Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999).  To determine whether conduct is severe or pervasive, the Court should look at the totality of the circumstances.  *See Stewart*, 586 F.3d at 330.  Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id*.  Finally, to be actionable, the challenged conduct "must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."  *Shepherd*, 168 F.3d at 874.

Here, the alleged harassment that is within the limitations period consists of the following: (1) Byrnes touched the plaintiff's "butt" and said "nice butt still;" (2) Byrnes gave the plaintiff a note asking "where he could get a 'BJ' in Willis, Texas," which the plaintiff understood to be a request for oral sex; and (3) Byrnes followed the plaintiff to lunch uninvited. The Court is of the opinion that, while Byrnes' conduct was offensive, it did not "rise to the level of severity or pervasiveness required by law." *Gibson v. Potter*, 264 F. App'x 397, 398 (5th Cir. 2008) (citations omitted); *see also Stewart*, 586 F.3d at 330 (while conduct was offensive, it was not severe or threatening, and, as such, was "not the kind of conduct that would interfere unreasonably with a reasonable person's work performance or destroy her opportunity to succeed in the workplace").

Indeed, the Fifth Circuit has found acts that were arguably similar to or more severe than those alleged in this case insufficient to create a hostile work environment because they did not rise to the level of severity or pervasiveness required by law. *See e.g.*, *Hockman v. Westward Communications*, LLC, 407 F.3d 317, 321-322, 328 (5th Cir. 2004) (conduct was not severe where the alleged harasser: told the plaintiff that a co-worker had a "nice behind and body;" "grabbed or brushed" against the plaintiff's "breasts and behind" several times; "slapped [the plaintiff's] behind with a newspaper;" held the plaintiff's cheeks and attempted to kiss her; and on more than one occasion, he asked the plaintiff to come in early so that he could be alone with her); *Shepherd*, 168 F.3d at 874 (conduct was not pervasive or severe where the plaintiff's co-worker remarked, "[y]our elbows are the same color as your nipples;" said, "you have big thighs" while he simulated looking under the plaintiff's dress; attempted to look down the plaintiff's dress on several occasions, and touched her arm, rubbing one of his hands from her shoulder down to her wrist); *Paul v. Northrop Grumman Ship Sys.*, 309 F. App'x 825 (5th Cir.

2009) (no hostile work environment where a co-worker walked up to the plaintiff until his chest touched her breasts, placed his hand on the plaintiff's stomach and ran his arm around her waist, and "rubbed his pelvic region across [the plaintiff's] hips and buttocks"); *Gibson v. Potter*, 264 F. App'x 397, 398 (5th Cir. 2008) (no hostile work environment where the plaintiff's supervisor "grabbed her on the buttocks and made suggestive comments" to her); *see also Barnett v. Boeing Co.*, 306 F. App'x 875, 876, 879-880 (5th Cir. 2009); *Derouen v. Carquest Auto Parts*, 275 F.3d 42 (5th Cir. 2001).

The plaintiff relies on the following cases to support her argument that Byrnes' conduct was sufficiently severe or pervasive to create a hostile work environment: *Alaniz v. Zamora-Quezada*, 591 F.3d 761 (2009), *Harvill v. Westward Comms., LLC*, 433 F.3d 428 (5th Cir. 2005), *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803 (5th Cir. 1996), and *Waltman v. Int'l Paper Co.*, 875 F.2d 468 (5th Cir. 1988). Those cases however are distinguishable because they involved egregious and/or threatening or "chronic" conduct against the plaintiffs. *See e.g., Waltman,* 875 F.2d at 470-471 (over 80% of the plaintiff's male co-workers made sexually suggestive comments to her and some propositioned her; the plaintiff's supervisor urged her to have sex with a co-worker, "pinched her buttocks with pliers," and tried to put his hands in her back pockets; the plaintiff received over thirty pornographic notes in her locker and many of the men left their lockers open with "pornographic pictures and used tampons;" and a co-worker told the plaintiff that "he would cut off her breast and shove it down her throat" and he later "dangled [the plaintiff] over a stairwell, more than thirty feet from the floor"); *Farpella-Crosby*, 97 F.3d at 805 (the plaintiff's supervisor made "frequent" comments attributing her large number of children to "a proclivity to engage in sexual activity;" joked to co-workers that the plaintiff "d[idn't] know how to use condoms;" "frequently" inquired about the plaintiff's sexual activity;

11 / 13

and "threatened" the plaintiff's "job on numerous occasions when she asked him to stop making" the comments); *Harvill*, 433 F.3d at 435-436 (during a seven-month period, despite the plaintiff's protests, the alleged harasser grabbed her and kissed her on the cheek, "popped rubber bands at her breasts," fondled her breasts "numerous times," and patted her on her buttocks "numerous times").

**B.     Retaliation**

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action. *See Stewart*, 586 F.3d at 331. Summary judgment is appropriate if the plaintiff is unable to satisfy any of the aforementioned three elements. *Id.*

The Court is of the opinion that the plaintiff, who is still employed by Lifechek, has not established that she was subjected to an adverse employment action. The plaintiff, in an amended EEOC charge from April of 2010, alleged that she "believe[s]" Lifechek retaliated against her by reducing her weekly hours from 40 to 28. However, in a response to the plaintiff's amended EEOC charge, Lifechek denied any retaliation and noted that the plaintiff's "claim that her hours were cut from 40 to 28 hours was based on a misunderstanding" and that Lifechek met with the plaintiff to address the misunderstanding. Nevertheless, in her response to the summary judgment motion, the plaintiff, besides her own assertions, has provided no competent summary judgment evidence to establish that her hours were reduced or to refute Lifechek's position that her claim was based on a misunderstanding. Therefore, the plaintiff's "unsubstantiated allegations" of retaliation are insufficient to survive summary judgment. *Gollas v. Univ. Of Texas Health Science. Ctr. At Houston*, 425 F. App'x 318, 329 (5th Cir. 2011); *see*

*also Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) ("a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'").[5]

## VI.   CONCLUSION

Based on the foregoing discussion, the Court finds that the plaintiff has failed to establish the fourth element of her sexual harassment claim, *i.e.*, that the alleged harassment affected a "term, condition, or privilege" of employment.  The plaintiff's retaliation claim also fails because she has failed to demonstrate that she suffered an adverse employment action.  Therefore, the Court GRANTS Lifechek's motion for summary judgment in its entirety.

It is so **ORDERED**.

SIGNED on this 30th day of May, 2013.

_____
Kenneth M. Hoyt
United States District Judge

---

[5] In the fact section of her response, the plaintiff mentions that she received a "retaliatory" write-up after filing her EEOC charge.  The plaintiff, however, has provided no details regarding the write-up.  In any event, the Court is of the opinion that, under the facts of this case, the write-up would not amount to an adverse employment action.  To constitute an adverse employment action , the challenged employment action "must be 'materially adverse,' [or] one that would 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.'" *Stewart*, 586 F.3d at 331.  In this case, the plaintiff acknowledges that as a result of the alleged write-up (and reduction in hours), she amended her charge of discrimination to include an allegation of retaliation.  Clearly, then, the alleged-write up did not "dissuade" the plaintiff from "making or supporting a charge" of discrimination since she amended her EEOC charge to add more complaints.